[*General Term, April,* 1873.]

## BATES, HAVENS & CO. *vs.* LOUIS BENNINGER.

If, by the terms of a contract, *hogs* are to be delivered to the buyer at a particular place, and are weighed for delivery at another, in the absence of the buyer, it is not error in the court to refuse to instruct the jury, that if the seller, previous to the day of delivery, stated to the purchaser that the latter was the place of delivery, and the purchaser remained silent, he thereby waived all objections to a delivery at the place fixed by the contract, and would be bound by a tender at the latter. Such evidence should go to the jury for the purpose of enabling them to find whether there had been such waiver or not.

If the purchaser, in such case, knew the seller was mistaken as to the place of delivery fixed by the contract, and kept silent with the intention of misleading the seller as to the correct place of delivery, he will not be *estopped* from insisting upon such term of the contract unless the jury find that the seller *was* misled thereby, especially if he claims that the latter was the place of delivery, and it is not found but that he would have tendered at such latter place, even if the purchaser had advised him fully of his claims in the premises.

Ordinarily, a party will not be held to waive a material term of a contract unless he intends and consents to do so. And every party to a contract is bound, at his peril, to know and perform its terms if he would enforce it; and if the other party do no act, or is guilty of no conduct which ought to mislead a reasonably prudent man, he will not render himself liable by failing to set the other right, when he ascertains he is going wrong ; *provided,* he in no manner encourages him to proceed in such erroneous manner. But if the jury obviously fail to consider the evidence under a proper charge given by the court, their verdict will be set aside.

*Stallo & Kittredge,* for plaintiffs.

*Broadwell & Coles,* for defendant.

YAPLE, J. This is a proceeding in error, brought to reverse a judgment rendered by this court at Special Term, upon the verdict of a jury in favor of Benninger, who was the defendant.

Bates, Havens & Co. sued Benninger to recover $477.45,

with interest from December 31, 1870, for the alleged breach of a certain contract. The petition states, that, in October, 1870, the plaintiffs, Bates, Havens & Co., made a contract with the defendant, Benninger, by which they agreed to sell and deliver to him on the 31st day of December, 1870, at the *Great Western stock-yards* in the city of Cincinnati, one hundred head of hogs, to average a certain weight, at the price of $8 per hundred pounds; that, on the 31st day of December, 1870, at the place of delivery, they were ready and willing to deliver such hogs, but the defendant neglected and refused to accept or pay for them; and that the price of such hogs had fallen to $6.50 per hundred pounds.

By his answer, the defendant denied all the allegations of the petition; but it is conceded that if the plaintiffs were entitled to recover anything, they were entitled to recover the amount claimed.

At the trial Havens, one of the plaintiffs (the other plaintiffs not having any personal knowledge of the facts), testified, by deposition, to all the facts alleged in the petition, as appears from the bill of exceptions, which contains all the evidence adduced at the trial. The defendant and another witness testified that the contract fixed the place of delivery at the *Brighton stock-yards*, in Cincinnati, which are about one mile from the Great Western stock-yards. They testified that the place of delivery was the chief matter of difference between the parties in negotiating the contract; that the plaintiff (Havens) desired to deliver at the Great Western stock-yards, to which the defendant objected, and insisted upon delivery at the Brighton yards, his place of business, and refused to contract unless delivery should be made there, and that the plaintiff, Havens, finally agreed to deliver there, and the contract was consummated. The plaintiff, Havens, and the defendant and his witnesses differed in their testimony as to several other terms of the contract, which it is unnecessary to consider. Between the middle and last of December, 1870, hogs had

fallen to $6.50 per 100 pounds, and the plaintff, Havens, and the defendant, at the latter's place of business, tried to agree upon the amount of damages the defendant should pay, and thus obviate the tender of the hogs. In this conversation, Havens swore that he stated over the terms of the contract, and "*thinks*" he named the Great Western stock-yards as the place of delivery; but he says that the defendant "knew very well where the place of delivery was." The defendant did not contradict or expressly admit any statement Havens made at that time. The defendant and another witness, who was present at the time, did not remember, as they swore, that the "Great Western stock-yards" were mentioned by Havens in that conversation.

The plaintiff, on the 31st day of December, 1870, had the hogs weighed for the defendant at the Great Western stock-yards, the defendant not being there. Defendant had instructed the weighmaster at Brighton to weigh the hogs if plaintiffs should bring them there for delivery to him. Plaintiff, Havens, saw defendant on 'Change after the weighing had been completed and told him of the fact, but did not say where they were weighed. Defendant replied that it was all right, and at once went to Brighton to receive them, expecting that the hogs were there. He learned on reaching there, from the weighmaster, that the hogs had been weighed at the Great Western yards. Plaintiffs notified defendant, in writing, of what had been done, the notice being left with the defendant's clerk at his place of business, in his absence, on 31st of December, 1870, and the defendant received such notice, on coming to his office, January 1, 1871.

It is obvious the main fact in dispute between the parties was, whether the place of delivery was the Great Western or the Brighton stock-yards, the plaintiffs claiming the first and the defendant the latter place; and on this issue the preponderance of evidence seems to us to have been on the side of the defendant.

In this state of case the plaintiffs, without abandoning their claims as to the terms of the contract fixing the place of delivery, but insisting upon it, asked of the court a series of charges, based upon the testimony of the plaintiff, Havens, that he "*thought*" he had mentioned to the defendant, before the time of delivery, at the defendant's place of business at the Brighton House, when they were trying to agree upon the amount defendant should pay and rescind the contract, the Great Western yards as the place of delivery, and that the defendant did not deny it, but remained silent; also, upon the fact that the defendant did not inform plaintiffs that he objected to the place of delivery; after he learned that the hogs had been weighed there for him, he did not notify them that he objected to the place, and required them to be delivered at the Brighton yards. Plaintiffs' counsel, therefore, requested the court, in writing, to charge the jury:

1. If the plaintiffs notified the defendant that they had weighed the hogs, and were ready and willing to deliver them to him at the Great Western stock-yards, and the defendant *made no objection* to the place of delivery, that would be a waiver of any objection to the place of delivery.

This charge the court refused to give, and, we think, properly. It asked, in effect, the court to find for the jury that the defendant *assented* to such delivery at a place other than that required by the terms of the contract, from mere non-objection—silence. The court would only have been authorized to instruct the jury that they were to consider such failure to object, and the silence of the defendant, as evidence, in connection with all the other facts and circumstances in the case, of an *assent* by the defendant to the delivery at such place, as a compliance with the contract by the plaintiffs. It does not follow that, if plaintiffs had weighed these hogs across the river in Covington, Kentucky, and then notified the defendant of such fact, and he simply failed to object to what had been done, he thereby,

in law, accepted Covington as the place of delivery in performance of plaintiffs' contract.    This disposes, also, of the third charge asked (the second charge having been given), as it is substantially the same as the first, simply adding to the words, " made no objection," etc., " and gave no notice to the plaintiff that he claimed that was not the proper place of delivery."    The remaining charges asked were as follows:

" 4. If the defendant was notified by the plaintiffs of their readiness to deliver the hogs, and knew that the plaintiffs claimed and believed, by the terms of the contract, that they were to be delivered at the Great Western stock-yards, and *intentionally withheld* from the plaintiffs the fact that he claimed they were to be delivered at the Brighton stock-yards, he can not now be permitted to set up such a claim as a defense to this action.

" 5. If one of the plaintiffs, subsequently to entering into the contract with the defendant, met the defendant on or about the 16th day of December, 1870, and in negotiation with him in regard to the performance of the contract, undertook to and did state to the defendant the terms of the contract as he understood them, and, among others, that the place of delivery of the hogs was at the Great Western stock-yards; and the defendant, *knowing that the plaintiff so understood the contract,* for the purpose of *preventing* them from making a tender *at the Brighton stock-yards,* where he claimed the delivery was to be made, *said nothing and took no objection to the correctness of the statement of the terms of the contract* by the plaintiff, in that case, he, the defendant, *waived* any claim that the hogs should be delivered at the Brighton stock-yards and not at the Great Western stock-yards."

Both these charges, as asked, the court refused to give to the jury.    This is especially insisted upon as error, because, it is claimed, that, if proven, they each amounted to an *estoppel in pais,* preventing the defendant from availing

Bates, Havens & Co. v. Benninger.

himself of the term of the contract fixing the place of delivery at the Brighton yards.

Let us see. Do any or all these facts, if true, prove, that if the defendant had expressly made known to plaintiffs all the terms of the contract as he claimed it to be, had insisted upon delivery at the Brighton yards, and had objected to a delivery at any other place, the plaintiffs *would have brought them to and delivered them at the Brighton yards?* Obviously not, and *non constat*, if defendant had said and claimed all he is blamed for not doing, the plaintiffs might have insisted that he was wrong in his claim as to such term in the contract, that the place was the one they claimed, and that they would still have weighed and tendered the hogs there, relying on their ability to prove the contract as they maintained its terms were. The pleadings and the evidence show that the *place of delivery* was made the real battle-ground between the parties, and that this feature of the case developed upon a change of base becoming necessary on the part of the plaintiffs. Though plaintiffs might have done just as they did, had the defendant done or said all that it is claimed he ought, it is yet insisted that he is estopped from objecting to the unauthorized place of delivery, though the plaintiffs would only have delivered the hogs there in any event. Had the charge further stated, " If the jury are satisfied from the evidence, that, had the defendant made known his claim that the hogs should be delivered at the Brighton yards under the contract, the plaintiffs could and would have been ready and willing to weigh and deliver them there," the question of estoppel would have been presented. As it is, the charges were both properly refused as asked.

The court then charged the jury (the entire charge not purporting to be set out in the bill of exceptions), that the defendant had the right to waive delivery at the Brighton yards; that after the contract was made, he might assent to a change of the place of delivery to the Great Western yards. As evidence to the jury, all the testimony of the

conduct of the defendant could be considered as to where the place of delivery was originally agreed upon, and as to whether it had been changed to the Great Western yards, or whether delivery there had been assented to by the defendant after the same was made.   No part of the court's charge is excepted to except one.   The court charged the jury : " If you should find that by the original contract the delivery was to take place at the Brighton stock-yards, and the plaintiffs notified the defendant on the 31st of December, 1870, being the last day for the delivery, that they *had* had the hogs weighed out for him at the Great Western stock-yards, *the defendant's silence and failure to object* to the delivery at that place would not be *a waiver* of the provision of the contract that the hogs should be delivered at the Brighton yards.   The plaintiffs' right to recover depended upon their strict compliance with the terms of the contract on their part, and if the defendant found out or knew they were mistaken as to the place of delivery, and were acting on that idea, he was under no obligation to correct that mistake, and when its effect would be to enable them to take several hundred dollars out of his pocket, because the price of hogs had fallen, he could hardly be expected to correct it."

This charge stated to the jury the legal rights of the parties if the place of delivery was fixed by the contract at the Brighton yards, and had not been changed to the Great Western yards until after the plaintiffs had made delivery there.   It holds that such delivery was, in itself, no compliance with the contract on the part of the plaintiffs ; and if they advised defendant of such delivery after it had been effected, and he simply kept silent, and made no objection, he did not thereby waive his right to have the hogs delivered according to contract, though he knew plaintiffs were acting under a mistake as to where the terms of their contract required them to deliver the hogs.

We do not think the court erred in this.   Every party to a contract is certainly bound, at his peril, to know and per-

form, or tender performance of its precedent terms if he intends to enforce it; and if the other party does no act, or is guilty of no conduct, which ought to mislead a reasonable man, he will not render himself liable by failing to set the other right where he ascertains that he has gone wrong. Ordinarily, a party will not waive a term of a contract unless he intends and consents to do so.

The motion for a new trial was also based on the claim that the verdict was contrary to the law and evidence. And while, then, we can find no error on the part of the court in refusing the charges asked by the plaintiffs, or in the charges it gave to the jury, we are led to inquire whether the jury, upon the evidence, should not have found that the defendant agreed to change the place of delivery from the Brighton to the Great Western stock-yards, or assented to the delivery of the hogs at the latter yards, when informed of the delivery, as they well might have done under a charge given by the court and not complained of by the plaintiff.

Justice should be so administered as to discourage entirely the breach of contracts by mere subterfuges. They should never meet with success in a court of law. The more we reflect upon the evidence in this case, the stronger becomes our conviction that, when the plaintiffs notified the defendant that they had weighed the hogs for him and that they awaited his acceptance (which was on 'Change near the middle of the day), he knew they were at the Great Western yards; that' his then hastening up to Brighton, where he had ordered the weighmaster to weigh them if they came, and to receive them, was rather to hold an advantage he thought he had, than an eagerness to take and pay for the hogs at Brighton at a loss of one and a half cents per pound, gross weight; and that his absence from his place of business until the next morning, which prevented his receiving in person written notice of delivery at the Great Western yards (the same being handed by one of the plaintiffs to his clerk) until he came back next morning,

was to prevent the plaintiffs from still delivering them at the Brighton yards on that day when they should learn from the defendant that he insisted upon a delivery at the latter place as the place required by the contract, which we think the plaintiffs could and would have done. We think that the jury, upon all the facts and circumstances of the case in evidence before them, ought to have found that the place of delivery was changed or waived from Brighton to the Great Western yards, or that delivery at the latter place was assented to by the defendant as a fulfillment of the contract. This a plain specific charge of the court *authorized* them to do; and we feel that they were misled by the series of charges asked by the plaintiffs' counsel, that the law *required* them so to find, which charges were properly refused, because they would have made the court the judge of both law and fact, and have left nothing for the jury to determine, when, as we have seen, it was possible for the jury to draw one of two opposite conclusions from the evidence, and which they alone had the right to draw. As the law could not conclusively presume the fact to be so, the jury must have forgotten that they were authorized to find it so.

We again advert to the danger of properly arriving at justice by the practice, now so common, of asking a long series of charges, which, if given, would be a mere partial and one-sided *argument* by the court to the jury of the case of the party requesting them to be given. When refused, as they nearly always must be, the jury, as in this case, may fail to weigh the evidence by the proper standard given by the court in its own charge, and which is not excepted to, and, therefore, likely to be overlooked or lightly regarded by the jury.

Without intending to refer to this case, we may say that it seems as if this objectionable practice has arisen from two purposes on the part of those who adopt it: first, a determination to lose the cause before the jury; and next, to reverse the result. The first always succeeds, the other rarely.

For these reasons, but for no errors of law by the court in charging or in refusing to charge the jury, we think the verdict and judgment below should be set aside, a new trial granted, and the cause remanded, to be proceeded in according to law.

Judge O'Connor dissented.